W. P. ANDERSON *vs.* THE STATE OF MISSISSIPPI et al.

When a tax collector of a county of this state has levied upon property, for payment of the taxes due, and has advertised the same for sale, it is proper to make him a party defendant to a bill enjoining the sale.

A county cannot be made directly a party to a suit. There is no statute in this state which authorizes the counties to maintain suits, or which gives an action directly against them.

If the counties can be regarded as *quasi* corporations, and as such be chargeable in actions brought directly against them, there should be means provided by the law, by which the judgments therein, if rendered against them, could be enforced. These means do not exist as supplied by any express statute, and it is difficult to conceive how a judgment rendered against a county of this state can be enforced.

The 17th section of the statute of 1441, in regard to the public revenue, and also the revenue act of 1844, (sec. 38, pamphlet acts, 741,) and the statute of 1846, (sec. 40, Hutch. Code, 193,) which provide that taxes imposed by said acts shall be preferred to all judgments, executions, incumbrances, and liens of any description whatsoever, and that they shall be, from the first day of March, in each and every year, a lien upon all real estate of the person assessed, within the county in which the assessment is made, do not impose a lien upon the personal estate, debts, claims, or choses in action of the person assessed.

A right of prior payment, as given by the statutes referred to, does not, of itself, constitute a lien.

A lien is a qualified right, which, in a given case, may be exercised over the property of another. It attaches to the subjects of property, and follows them in their transmission to others. Priority of payment is a preference in the appropriation of the proceeds of the property. *Held*, if before it has attached, there is a *bonâ fide* transfer of the property, the right will be lost.

The priority of payment secured to the state by statute, does not operate as a lien upon the personal property of the tax-payer, and the *bonâ fide* transfer of personal property for a valid consideration, would not be overreached by it.

Where no lien exists prior to an advertisement of sale, for taxes due, of choses in action, such advertisement, (regarding it as a levy,) does not amount to a lien, when made after a *bonâ fide* assignment. *Held*, that the tax collector would have a right to prior payment out of the proceeds, but would acquire no title to the *choses* themselves.

ON appeal from the superior court of chancery; Hon. Stephen Cocke, chancellor.

The facts of this case are elaborately stated in the opinion of the court.

*Fulton Anderson*, for plaintiff in error.

During the years 1841, 1842, 1843, 1844, 1845, 1846 and 1847, no assessment of taxes was made on the bank stock of the Commercial & Railroad Bank of Vicksburg, nor was any tax collected.

The sheriff of Warren county, acting under the supposed authority of the revenue law of 1848, undertook to make an assessment against this bank for both state and county taxes for those years, (see the act, Hutch. Code, 199, 200,) and was proceeding to collect them in the mode pointed out in the act, by sale of the various evidences of indebtedness, when the plaintiff in error, who claims the assets of said bank by assignment, obtained the injunction in this case.

By the revenue laws of the years 1841, 1844 and 1846, it is provided that the assessor of taxes shall, in a particular mode therein provided, make the assessment of taxes on bank stock, as well as all other kinds of property.

By the act of 1841, an *ad valorem* tax one fourth of one per cent. was directed to be assessed " on all bank stock subscribed for in any incorporated bank, which shall not have paid a bonus for its charter, or have been exempted by the provisions thereof."

In the same act it is provided, that the assessor shall make the assessment, and prepare an assessment roll, in which shall be set down each item of taxation, with the value thereof, on which an *ad valorem* tax was directed to be imposed by the first section of the law, and this shall be done between the first days of March and July, in each year. See Acts of 1841, ch. 1, sec. 4, p. 52.

It is also provided that the assessment shall be completed by the first day of July, in each year. See sec. 9, ch. 1, of Acts of 1841.

It further provides, that the presidents or cashiers of banks,

Anderson *v*. The State of Mississippi et al.

on or before the first of May in each year, shall deliver the assessor a written statement of the stock paid in. See Acts of 1841, ch. 1, sec. 43.

And that if within thirty days from said first of May, the president or cashier shall fail or refuse to deliver such a written statement, the assessor shall assess the bank according to the capital stock authorized by the charter. See sec. 44 of same law.

By the same law it is provided that the assessor, in case he fail to assess any property liable to taxation, shall certify the same to his successor, who shall assess the same. See sec. 10.

The law also provides the mode of proceeding against banks which refuse or neglect to pay the taxes assessed. See Acts 1841, ch. 1, secs. 1, 4, 9, 10, 43, 44 and 45.

The tax of 1844 is very similar in its provisions, but the tax of that year is to be assessed at three tenths of one per cent. See Acts of 1844, ch. 1, secs. 1, 5, 8, 9, 58, 59 and 60.

The Act of 1846 is similar in its provisions to the other two acts, except in this, it provides that the assessment shall be made between the first days of May and September, and the roll completed on or before the first day of September; that the presidents and cashiers shall return to the assessor lists of stock paid in by the first day of July, and in case of failure to do so, in thirty days thereafter the assessor shall make the assessment according to the amount of stock authorized by law. See Acts of 1846, ch. 1, secs. 4, 9, 60 and 61.

The Act of 1846 also changes the remedy in case of the failure of the assessor to make assessment, by providing that he shall certify to the collector his failure, &c., and that the collector of that year shall make the assessment. See Acts of 1846, ch. 1, sec. 9.

All these acts keep the offices of assessor and collector distinct, and none of them authorize the collector to perform the duty of assessor, except in the last as above stated in the 9th section the collector is authorized, under the particular circumstances therein stated, to make an assessment for that year.

39*

The importance of the above references will be seen by recurring to the Act of 1848, which provides that, "where banks are liable to taxation, and have refused or neglected to pay the same," the sheriff shall proceed in a certain mode pointed out to collect the taxes, to wit: twenty-five per cent. of every hundred dollars of capital stock, and the county tax thereon, including all arrearages of taxes not heretofore paid up.

This act, by its terms, operates only on defaulting banks, such as had failed, refused, or neglected to pay the taxes of past years.

Now it is clear that if the bank has not neglected or refused to pay its taxes during the past years, the law does not apply to it; and whether it has or not neglected or refused to do so, is to be ascertained by inquiring whether the tax collector, by these laws, ever, during those years, became invested with the power to demand or receive the taxes on bank stock from this bank?  This inquiry must be decided in the negative. It is, I think, susceptible of demonstration, that during no one of the years in question, was the tax collector, who was the sheriff, clothed with the power to demand or collect, or even receive any taxes from this bank, on account of its stock.

The tax collector has no authority to collect taxes without an assessment, and any act which he performs with a view to that object, except under an assessment properly made, is illegal and void. Not only are his acts void if there be no assessment, but the law is so strict upon this subject, if there be an assessment made illegally or improperly, or without a strict compliance with the requisitions of the statute, the tax collector has no right to proceed. *Doughty* v. *Hope*, 1 Comstock's Rep. 79; 3 Denio's Rep. 5, 98; *Middleton* v. *Berlin*, 18 Conn. Rep. 189; *Blossom* v. *Cannon*, 14 Mass. Rep. 177; *Granger* v. *Parsons*, 2 Pick. Rep. 392; *Thayer* v. *Stearns*, 1 Pick. Rep. 482; *Thurston* v. *Little*, 3 Mass. Rep. 429.

These authorities establish clearly that if the assessment be illegally made, the tax collector has no power to collect, and his deed to a purchaser would be absolutely void.

The laws have been particular in prescribing particular

forms and duties to be complied with before the odious power of collecting taxes can be exercised by ministerial officers. *Bratton* v. *Mitchell*, 1 Watts & Serg. Rep. 310. In the case last referred to, the court expressly decides that without an assessment, the collector cannot proceed.

The power of the collector is a naked, legal power, not connected with any interest, and every prerequisite to its exercise must be strictly complied with. *Jackson* v. *Shepherd*, 7 Cow. Rep. 88 ; *Williams* v. *Peyton*, 4 Wheat. Rep. 77.

Even courts of record, which are by law clothed with the authority under certain circumstances, to direct the sale of lands for unpaid taxes, must, by their records, show every fact necessary to give the court the power, or the action of the collector will be void.

Chief Justice Marshall, in 4 Cranch, Rep. 403, has also recognised the general rule, that tax collectors must proceed strictly according to the legislative requirement. *Stead's Executors* v. *Course*, 4 Cranch, 403.

It is clear that no assessment was ever made on the bank stock in this case, and that the bank never became liable to pay any tax on its stock, and, as a necessary conclusion, cannot be said to have neglected or refused to pay a tax which it was never liable to pay, and which no officer was authorized to collect.

If these propositions are correct, then it is clear that the Act of 1848 does not apply to the bank. It does not apply to a case of this kind, but only to banks which had been assessed, and refused to pay.

Its non-application to this case is the more apparent when it is considered that it provides no mode of assessment, but simply directs the sheriff to proceed to collect arrearages on assessments heretofore made.

But the laws of 1841 and 1844 imposed an *ad valorem* tax on bank stock, and the sheriff has levied a specific tax on the whole amount of the stock subscribed for ; hence this assessment, if the sheriff had the power to make it, is for too large a sum, and therefore on account of the excess the whole tax is void.

In the acts of 1841 and 1844, the legislature must have intended that if the bank stock on which they imposed a tax was susceptible of a valuation, it should be valued, and the tax assessed according to this value, evidently leaving the duty of valuation to the assessor, who is to fix the amount of the tax.

The case in 7 Hill's New York Reports clearly decides, that the words " capital stock" of a corporation import something that is susceptible of a valuation, which is to be ascertained by the assessor, by reference to the marketable value of the stock. *The Farmers Loan and Trust Company* v. *The Mayor, &c. of New York,* 7 Hill's N. Y. Rep.; *The State* v. *The State Bank,* 6 Blackf. R. 349; *United States Bank* v. *The State,* 12 S. & M. 456.

If the valuation of the stock is essential, the necessity of an assessment is more apparent. The stock in this case is shown by the bill to have been worth not more than four dollars during each year; the assessment, therefore, by the sheriff, even if he had the right to assess, being excessive, is illegal and void. *Huse* v. *Merriam,* 2 Maine R. 375; *Libby* v. *Burnham,* 15 Mass. 144; 1 Mass. R. 181.

Lastly, the acts of 1841 and 1844 do not make the taxes imposed a lien upon personal property, nor does the act of 1848. The assessment by none of these acts constitutes a lien. When then did a lien accrue in this case? If there had been an actual levy on visible property, of course there would be a lien from that date; there is no actual levy. We may suppose that the advertisement of the sheriff in the place of a levy, would be a lien for the sake of argument. But before this advertisement all the assets had been conveyed to plaintiff in error. The sheriff could not, therefore, sell them on the plain principle that the property of A. could not be sold for the taxes of B. *Bangs* v. *Snow,* 1 Mass. 181; *Stetson* v. *Kempton,* 13 Mass. Rep. 272.

The assessment being illegal as to part, is void for the whole, it being impossible to draw the line between what is valid and what is invalid.

But the tax is also void, because it exceeds the amount

allowed by the charter of the bank. The levy is general for state and county, and other purposes, exceeding twenty-five cents on every hundred dollars of stock; whereas the charter only allows that amount and for the benefit of the literary fund.

The bank charter contains, in substance, the provision that the bank should not be liable for any tax for the space of two years from the time fixed for its commencing operations, and that after that time a tax might be imposed, not exceeding twenty-five cents on each hundred dollars of stock, for the benefit of the literary fund.	Acts of 1833.

The legislature, in the case of this bank, abandoned its general inherent right of taxation. That the legislature can by contract abandon such a right, is most clearly recognised in the case above referred to in 4 Peters, 516.

And having abandoned it under the charter, had no right to interpose a tax of more than one quarter per cent., and that for the benefit of the literary fund.

On the subject above mentioned, see *Fletcher* v. *Peck*, 6 Cranch R. 87; *New Jersey* v. *Wilson*, 7 Cranch, 104; *Terrett* v. *Taylor*, 9 Ib. 43; *Sturgis* v. *Crowninshield*, 4 Wheat. 122; *Dartmouth College* v. *Woodward*, 4 Ib. 518; *Weston* v. *Charleston*, 2 Peters, 450.

The above views, if correct, will show that the imposition of a county tax on this bank was unconstitutional, even if the state tax were valid.	*Bank of Cape Fear* v. *Edwards*, 5 N. C. Rep. 516.

*H. T. Ellett*, for appellee, Steele.

The demurrer of Claiborne Steele, as tax collector of Warren county, was correctly allowed. He has no interest in the suit, and is not a proper party to the bill, but is merely the officer appointed by the law to collect taxes. The state of Mississippi and the county of Warren are the parties in interest, and the tax collector is not the officer representing either of them. The taxes due the county of Warren cannot be enjoined, unless the county is made a party to the bill, any more than the state taxes can be enjoined without making the state a party. If the county taxes can be enjoined by a bill against

the tax collector alone, then the state taxes may be enjoined in like manner, and it will follow as a corollary that a judgment at law may be perpetually enjoined in chancery on a bill filed against the incumbent of the office of sheriff, without making the plaintiff a party. The absurdity of the proceeding in the present case is further manifested by the reflection, that a perpetual injunction against Steele would not operate upon any subsequent holder of the office of tax-collector.

But if the demurrer of Steele is to be regarded as the demurrer of the county of Warren, and if the court will undertake to adjudicate upon the rights of the county on this record, we insist that the demurrer was properly allowed on the general merits of the case.

By the Revenue Act of 1841, a tax of one fourth of one per per cent. is imposed upon the stock of incorporated banks, and by the Act of 1844, the tax is fixed at three tenths of one per cent.

By the Act of 1822, Code 708, sec. 24, the county courts were authorized and required to levy a tax for county purposes upon the same persons and property as were subject to state taxes according to the assessment of that year, but the tax so levied could not exceed one half the amount of the state tax.

The Act of March 2, 1833, Code 710, sec. 3, transferred this power to the boards of county police, and authorized them to levy a special tax whenever the regular annual levy might not be sufficient; such special tax, however, in no one year to exceed one half the amount of the state tax.

The Act of 1722, Code 708, sec. 35, requires the county courts to build and keep in repair suitable court-houses and jails, and this duty by the Act of March 2, 1833, Code 710, sec. 3, is transferred to the board of police.

All these acts were in force at the time when the charter of the Commercial and Railroad Bank at Vicksburg was granted, the date of which is December 25, 1833. Pamphlet Acts, p. 125.

By the Act of February 16, 1838, Code 713, sec. 1, the boards of police are authorized to levy a special tax sufficient for the

Anderson *v*. The State of Mississippi et al.

purpose of building and repairing court-houses and jails, whether it exceeds fifty per cent. on the state tax or not.

The Act of March 4, 1846, Code 231, sec. 6, authorizes the levy of a special tax, not exceeding the state tax, for common. school purposes.

Many of the objections taken to the validity of these taxes apply with equal force to the state and county taxes; some apply exclusively to the latter.

1. It is said to be a fatal objection to the taxes; that the assessment was not actually made by the assessor, during each of the years from 1841 to 1847.

It is not denied by the bill that the tax was imposed, and that the law required it to be assessed and collected during those years. It was then a debt or duty which the bank owed to the state, and which it was bound to discharge. Nor is it questioned that the board of police of Warren county directed the county taxes to be assessed and collected regularly from year to year, as shown by the assessments filed with the bill. The same debt or duty was then due to the county as to the state. The law directed and required the assessor to assess the taxes by a certain day, and the assessor neglected to perform his duty; and this omission, it is contended, releases the bank from the tax, and puts it beyond the power of the legislature to direct a subsequent assessment, or to provide any new remedy for the collection of the taxes. The force of this argument is not perceived. Even had the assessor performed his duty after the day, without any new legislation, the tax would have been legal, for the violation of a directory statute never vitiates the act done. If the substance of the requirement is performed, a departure from the time, mode or place prescribed is never material. All our revenue laws, too, contain provisions for the collection of the arrears of taxes which the assessor has omitted to put down in his roll. See Act of 1846, Code 185, sec. 9. But here the act of 1848 comes in, and directs the collection of these taxes which the bank had been required to pay, but had evaded through the omission of the assessor, and furnished also a new remedy to compel their payment by a sale of the choses in action of the bank:

It is argued on the other side, in this connection, that it is not the law but the assessment, that creates the duty, and therefore, unless the assessment is made within the limited time, there is no duty. But manifestly, the converse of this proposition is the truth. It is the tax law which creates the duty, and the assessment is merely the act of the ministerial officer appointed to enforce the duty thus created. His temporary omission to fulfil his office can never be held to release the citizen from his obligation to contribute to the public burdens.

It is also insisted by the appellant, that the Act of 1848 only requires and provides for the collection of the unpaid taxes which had been previously regularly assessed by the assessor. But this argument finds no support in the language of the act. The only conditions required are that the " Banks shall be liable to taxation, and have heretofore refused or neglected to pay the same." Nothing is said as to the assessment, and the plain meaning and intention of the act is, to require the collection of all the taxes which the bank by law was liable to pay, whether they had been assessed or not.

2. It is objected that the assessment is made upon the nominal, and not upon the actual value of the stock.

It is not important to inquire whether the law contemplates an assessment upon the price which the stock brings when sold in the public market, or upon the charter value of the shares. If it were, a few considerations would suffice to show that the words *ad valorem* in the act, if intended to apply at all to bank stock and money loaned at interest, were not intended to refer to the market price of the securities, but to the numerical amount in dollars and cents. Securities are valuable according to the time they have to run, and the ultimate safety of the debt. The longer the time, the more valuable the security, if safe. Yet, if a man lend money for a long time, and on unquestionable security, the fact that he could sell it in the market at a premium, would surely not make him liable to pay a tax on that premium which he could get if he wanted to sell, as well as upon the amount of money which he loaned. So, if he loaned for a short time, and on weak

Anderson *v.* The State of Mississippi et al.

security, which he could not sell at par, that is no reason why he should pay taxes on less than he loaned. And should the bank stock be above par, as all good stocks are, surely the legislature could not tax it at its market price. And if not, then the fact that it is under par cannot, on the other hand, reduce the assessment; for the tax is twenty-five cents on every hundred dollars of stock; not on every hundred dollars' worth of stock. So it was held in New Jersey. 1 Halstead, 100.

3. It is objected that by the charter the state tax on this bank must go into the literary fund, and that the laws imposing these taxes do not direct that disposition to be made of the money.

The answer to this position is, that the charter of the bank is the law of the land as far as it goes, and that law directs that these taxes shall be paid into the literary fund. It would have been idle for the legislature to have repeated this direction. They have not said it shall be applied to any other purpose, and by the law, as it now stands, the money when paid will form a part of the literary fund. If the legislature had directed its application to a different object, that would not have furnished a ground for the bank to refuse payment of the tax. It could only have raised a question between the trustees of the literary fund and the state, whether the money could be diverted from the purpose expressed in the charter.

4. It is said that the state has not attempted to execute the power reserved by the charter, for that by the act of 1844, the tax imposed is three tenths, instead of one fourth of one per cent.

This objection does not apply to the act of 1841, which was in force until 1844, and which imposes a tax of one fourth of one per cent. In regard to the act of 1844, the tax of three tenths of one per cent. exceeds the limit fixed in the charter by one twentieth of one per cent. But this would not, in any case, avoid the whole tax, but only the excess. The principle is familiar in relation to the execution of powers, that when there is a complete execution of the power, and something more, the execution is only void for the excess. 2 Sugd. on Pow. 80.

This point, however, is only made in argument. It is not stated in the bill as a ground of relief, nor is the fact in any way charged, and therefore the point cannot be noticed.

But in fact, this excess has been released by the board of police, as well as an error corrected in the total amount of the stock, as shown by Exhibit D, and the assessment is perfectly correct.

Lastly. It remains to consider an objection that applies only to the county taxes, and involves the most important question in the cause. It is said by the appellant that this bank is entirely exempted by her charter from all liability to taxation for county or local purposes. This proposition is denied.

That the taxing power is of vital importance to the existence of every government; that its abandonment is never to be presumed; and that we must look for the exemption in the language of the instrument, are settled principles. *United States Bank* v. *The State*, 12 S. & M. 457; *Providence Bank* v. *Billings et al.*, 4 Peters, 561, 562.

Keeping in view these principles, we contend that the charter contains no exemption whatever from liability to taxation after two years; but merely a limitation of the amount of tax which the state after that period may impose. No authority is limited but that of the state, and as the legislature can only impose state taxes, it follows that the limitation can only apply to state taxes. The right of the counties to impose taxes is of as vital importance to them, as a similar power is to the state, and the power of the counties is not limited at all by the charter, but only by the general laws of the state.

In the *Commercial Bank of Manchester* v. *Nolan*, 7 Howard, 524, the court say, "An act of incorporation of necessity has reference to the existing laws of the state in which it is passed." Then the existing laws of the state cannot be affected by the charter, except so far as they are altered by express words, or so far as they come in direct conflict with it.

That the power of the county courts to levy taxes for county purposes is not to be considered as taken away by the general language of a clause in the new bill of rights, providing that

taxes shall only be imposed by the representatives of the people, but that such a clause only applies where a tax is to bear on all the citizens of the state, or all the property in the state, is settled by adjudication, in Virginia and North Carolina. *Case of County Levy*, 5 Call, 139 ; *Lockhart* v. *Harrington*, 1 Hawks, 408. And these cases are strongly in point in support of the principle for which we contend.

Then the question remains whether the debts and claims seized and advertised by the collector, are liable to be sold for the payment of the taxcs.

By the Act of 1841, Code 176, sec. 18, it is enacted that " All taxes shall be preferred to all judgments, executions, incumbrances, and liens of any description whatever," and they bind lands from the first day of March in each year. This provision has not been repealed, but is re-enacted in the subsequent revenue laws. It is also a general principle, that governments are entitled to priority of payment from their debtors ; but the statute is enough for our purpose.

There can be no doubt of the power of the legislature to make taxes a lien upon choses in action, or to authorize the sale of them, and that without the actual seizure or manual possession of the evidence of the debt. In the case of judgments, obviously the most tangible of all choses in action, such seizure and possession would be impossible. The Act of February 25, 1848, Code 199, makes all the debts due to the banks, or their assignees, liable to sale for the payment of taxes.

The effect of this act is to make the taxes previously imposed, and for which the bank was then liable, a lien upon these debts, and the assignment to complainant was not made until May 25, 1848, after the act took effect, and after the actual seizure of the debts. The debts are therefore liable to sale notwithstanding the assignment.

But, without any actual lien, if it should be thought that the act of 1848 gives none, we are entitled to the same remedy. The deed is a mere general assignment in trust for the payment of certain debts, the overplus to revert to the bank. The act makes the debts liable in the hands of such assignee, and

the complainant not having been appointed assignee until after the act passed, took the assets subject to the liability.

But the point is even yet more clear. The state and county are creditors of the bank for the amount of taxes. Their debt is of equal dignity with a judgment, and they are entitled to priority of payment over all other liens and incumbrances of every kind whatever. The assignment, which is only a lien or incumbrance to secure the payment of the debts named in it, makes no provision for the payment of this debt. If the state or county comes in as a creditor under the assignment, it must be in accordance with and subject to its provisions. But, being entitled to priority, the deed of assignment is in fraud of their rights, and as creditors they are not bound by it, but may treat it as a nullity, and assert their priority by a seizure and sale of the property.

Mr. Chief Justice Smith delivered the opinion of the court.

This bill was filed in the superior court of chancery to restrain the tax collector for Warren county from selling certain debts and claims, held and claimed by the appellant as the assignee of the Commercial and Railroad Bank of Vicksburg.

The bill charges that on the 20th of May, 1848, the defendant Steele, the said tax collector, assessed the capital stock of the said bank for the state and county taxes, and also for a special tax, alleged to be due by said bank for each of the years 1841 to 1847 inclusive, which said taxes had not before been assessed. That by virtue of said assessment, the said Steele, on the 31st of May, 1848, gave notice that he would, on the 3d of July thereafter, sell at public sale a large number of the debts and claims which had been assigned to the appellant; that nearly all of said claims were in suit before the date of the assessment, and that they never were in the possession of the said Steele.

The bill further charges, that on the 25th of May, 1848, the bank, by deed, assigned to complainant, in trust for the payment of her debts, the whole of her bonds, bills, notes, and other choses in action, which he holds and claims as trustee by virtue of said assignment.

The bill insists that the said assessment was wholly void, because not actually made by the assessor within each of the years from 1841 to 1847 ; and also for the reason that the tax was assessed upon the nominal amount, and not upon the cash value of the capital stock of the bank.

The bill further insists, that if the assessment were valid, the debts and claims in the hands of the appellant are nevertheless not subject to sale for the payment of said taxes, for the reason that there was no actual levy made upon them by the collector, and that they were assigned to appellant before notice was given of the sale; there being no law which secures to the state a lien upon choses in action for the payment of taxes.

To the bill the defendants, Steele and the State of Mississippi, filed a general demurrer, which was sustained, and the bill was dismissed.

The said bank, also a defendant, interposed no defence ; and as far as we are informed by the record, does not contest her liability to pay the taxes assessed against her, nor does she question the title of the appellant to the debts and claims assigned to him, as set forth in the bill.

Regarding the appellant, therefore, as the only party to the record who is interested in defeating a sale by the collector of. these choses, for the purpose of satisfying the taxes assessed and claimed against the bank, we are relieved from the necessity of passing upon most of the points made in the luminous and very able argument of the cause. Upon this view of the case, we shall not notice any of the questions involved in the proposition assumed and controverted by the respective counsel, that the said assessment was made by the tax collector of Warren county, in the due execution of a valid authority conferred by the statute ; and hence that the taxes demanded by virtue of such assessment are a just and valid charge against the bank, but shall confine our inquiries mainly to the question, Whether, admitting the assumed validity of this demand for the said taxes, the bonds, bills and notes, or the debts of which they are the evidences, held by the appellant, as the assignee of the bank, are subject to seizure and sale by the said collector in satisfaction of the same ?

40*

Before, however, we proceed to an examination of this question, we shall notice a preliminary point made by counsel for one of the appellees, not connected with the merits of the cause.

It is contended that, as the defendant Steele had no interest in the subject of the suit, but acted in the matter merely as the officer appointed by the law to collect the taxes due to the county and state, he should not have been made a party to the bill. Hence, it is insisted that his demurrer was correctly allowed.

We do not assent to the proposition. If it were regular to raise the question of the misjoinder of parties under a general demurrer for want of equity on the face of the bill, the position is untenable for another reason. The county of Warren we apprehend could not have been made directly a party to the suit. At least there is no statute which authorizes the counties in this state to maintain suits, or which gives an action against them. If the counties can be regarded as *quasi* corporations, and as such be chargeable in actions brought directly against them, there should be means provided by the law by which the judgments therein if rendered against them could be enforced. These means do not exist as supplied by any express statutory provision, and it is difficult to conceive how a judgment rendered against a county in this state can be enforced. See 3 S. & M. 529, and cases cited. Assuming that Warren county could not have been sued, and conceding, as contended for, that she was a party in interest, there seems to be no doubt of the propriety of making the tax collector a party to the bill. The county was beyond the reach of the appellant, and his only remedy to prevent the threatened injury was, by acting on the officer through whose agency it was about to be inflicted. *Osborn* v. *United States Bank*, 9 Wheat. 738.

The determination of the question, whether the debts and claims, advertised by the collector, are liable to be sold for the payment of the said taxes, depends upon the operation of the statutes, which secure to the state a right of prior satisfaction out of the property of the debtor, for all unpaid taxes.

The 17th section of the statute of 1841, in regard to the

public revenue, provides that taxes imposed by the act shall be preferred to all payments, executions, incumbrances, and liens of any description whatsoever; and that they shall be from the 1st day of March, in each and every year, a lien upon all real estate of the person assessed, within the county in which the assessment is made. The same provisions are contained in the revenue act of 1844, (sec. 38, Pamph. Acts, p. 74,) and in the Statute of 1846, sec. 40; Hutch. Dig. 193.

By these statutes an express lien is created as to all of the real estate of the tax debtor. If these laws also impose a lien upon personal estate, embracing debts and claims, or choses in action, of the persons assessed, the debts and claims in the possession of the appellant are liable for the payment of the taxes assessed against the bank.

There is no lien expressly given as to the personal property of the tax debtor by the statutes above quoted. If it existed at all, it must result from the priority of payment secured to the state. But a right of prior payment does not of itself constitute a lien. The distinction is an obvious one. A lien is said to be a qualified right, which, in a given case, may be exercised over the property of another. *Lickbarrow* v. *Mason*, 6 East, 20. It attaches to the subjects of property, and follows them in their transmission to others. Priority in payment is a preference in the appropriation of the proceeds of the debtor's property. Hence if before it has attached there is a *bnoâ fide* transfer of the property, the right will be lost. *Brent* v. *The Bank of Washington*, 10 Peters, 611.

The fifth section of the act of congress, 1797, (1 Story, Laws, 464 – 465,) secures to the United States priority of payment out of the estates of insolvent debtors. The effect of this act is not materially different from the statute under consideration, so far as the personal property of the persons assessed is affected by the latter.

In *United States* v. *Fisher*, 2 Cranch, 358, a case arising under the 5th section of the act of congress above mentioned, the court say, "On this subject it is to be remarked that no lien is created by this law. No *bonâ fide* transfer of property, in the ordinary course of business, is overreached. It is only

a priority in payment, which, under different modifications, is a regulation in common use."

In *Hooe* v. *United States*, 3 Cranch, 73, a case also arising under the 5th section of that statute, the court again say : " In construing the statutes on this subject, it has been stated by the court, on great deliberation, that the priority to which the United States are entitled does not partake of the character of a lien on the property of public debtors."

After mature deliberation, we adopt a similar construction in regard to the statutes under consideration, and hold that the priority secured to the state does not operate as a lien upon the personal property of the tax payer. Hence the *bonâ fide* transfer of personal property, upon a valid consideration, would not be overreached by it.

There was no manual possession taken, nor actual levy made of the debts and claims. Notice of the sale was given on the 31st of May ; and if this be regarded as equivalent to a levy, it did not occur until after the assignmentt o the appellant, which was made on the 25th of the same month. It is evident that no lien was acquired by the notice of sale, regarding it as a levy, if none existed prior to the assignment.

But assuming that a priority of payment attached by virtue of the statute of 25th February, 1848, which was not divested by the assignment, such preference of payment would not authorize a sale by the collector, of the debts and claims. He would have a right of prior payment out of the proceeds, but would acquire no title to the choses themselves. 1 Pet. 439 ; *Brent* v. *The Bank of Washington*, 10 Ib. 611.

Taking this view of the case, we think the demurrer should have been overruled ; we therefore reverse the decree.

YERGER, J., having been engaged as counsel, gave no opinion in this case.