Ewing, J.
The questions for decision in this case arise upon two applications by the receiver of the Freshwater Construction Company for instructions of the court, as to the distribution of funds which have come into his hands by his sale, under orders of this court, of certain chattel property of that company which came into possession of the receiver *465 by virtue of his appointment at the beginning of the case.
The first request seeks the instruction of the court as to the receiver’s duty with respect to intervening claims asserted by the county treasurer for two items of personal property tax, the first item being the assessment for the year 1930 in the sum of $1,066.17 which accrued prior to the receivership, and the second item being the assessment for the year 1932 amounting to $956.34. In addition he has requested instruction as to the payment and priority, if any, of the corporate franchise tax assessment due to the state for the year 1932. The receiver was appointed and qualified on January 4, 1932. The action is one brought by the Surety Company apparently in equity but claimed by their brief to be brought under favor of Sections 12206 and 12208, General Code, to subject the assets of the defendant construction company to such extent as is necessary to reimburse the surety company for the expenditures which it has been required to make by reason of its liability as surety on bonds given by the construction company to assure its performance of public improvement contracts.
Such claims of the surety company have heretofore been determined by another branch of this court to total $64,512.20. Pursuant to the order of sale under such decree the receiver sold an automobile, and office furniture from which he realized the sum of $425.25 and miscellaneous road building equipment and materials from which he realized the sum of $13,815.31. The automobile and the office furniture were free from encumbrance, but at the time of his appointment the road building equipment and materials were encumbered by a chattel mortgage executed by the construction company on the 7th day of May, 1931, in favor of the plaintiff surety company and the defendant the Standard Trust Bank jointly. This chattel mortgage was duly filed for record on May 8, 1931, and by the agreed statement, of facts is conceded to have been a valid mortgage securing an amount due the mortgagees in excess of the sum realized from the sale. Said mortgaged chattels were sold by the receiver pursuant to a stipulation of the mortgagees and an order of court providing for the transfer of the lien of such mortgage to the *466 funds realized by the sale, the claims under the mortgage having been asserted by cross-petition.
The receiver has already expended with approval of court from the funds received by him $4,618.80 as costs and expenses of administration and still has in hand a balance of $9,621.76 together with some other assets which are unencumbered but which have not been liquidated and of which the value has not been determined. By the first request for instruction the court is therefore called upon to determine whether the residue of proceeds of sale of such mortgaged chattels should be paid to the mortgagees or alternatively, whether and to what extent the claims for unpaid taxes are entitled to preference over debts secured by the chattel mortgage.
As to the duty of the receiver to pay the small item of corporate franchise tax in preference to all other claims, there can be no doubt since the statute (Section 5506, General Code) provides that such tax shall become the first and best lien on all corporate property.
The question as to the asserted right of preference of the 1932 tax which accrued during the receivership may, similarly be disposed of without difficulty. It was conceded in oral argument that this assessment was based upon a return made by the receiver himself and the statute then and now existing requires the return of the corporation in receivership to be made by the receiver. This is Section 5370, General Code, which became effective June 30, 1931. On this subject this statute was a change merely in form and not in substance from former Section 5372-1, General Code, which the Supreme Court construed in Morrow v. Hess, 116 O. S., 439, holding- that it required property to be listed by the receiver having possession thereof upon tax listing day. The listing day, of course, means the date for filing the return which by Section 5367, General Code, is to be done between February 15th and March 31st. In the court’s opinion the taxation statutes should further be construed as requiring this tax to be paid by the receiver as an incident of his care of the property in his hands. Furthermore, it seems to be almost universally held, as a -rule of administration both in this state and elsewhere, that taxes accruing- during receiver *467 ship upon property in the hands of a receiver shall be treated and paid as part of the costs and expenses of administration.
But the question as to the delinquent personal tax of 1930 is one of far greater difficulty. It is conceded that there is no statute making personal taxes a lien but it is contended first, that the state, as an incident of governmental sovereignty has a paramount right to preference over creditors of every kind, and, alternatively, that the state’s right to such preference is necessarily implied as the meaning and effect of Sections 8339 and 11138, General Code, when construed together, as being in pari materia. There appears to be eminent authority in support of these contentions. In Hamilton v. Beggs Co., 171 Fed. Rep. 157, Judge Sater held that personal property taxes were entitled to priority of payment as against the claims of general creditors, basing his decision however upon his construction of what was then Section 3206-a of the Revised Statutes, now appearing substantially unchanged as Section 8339, General Code. In Mortgage Co. v. Syfert, 24 N. P. (N. S.) 157, the Common Pleas Court of Franklin county similarly directed the receiver to pay the personal taxes in preference to the claims of general creditors, apparently basing this conclusion upon these two statutes, and holding that thereby the legislature either “recognized the common law prerogative or its equivalent, as expressed in the statutes referred to, or thereby declared a priority to be followed for the administration of estates by receivers and assignees.” In the recent case of Steele v. Elthor Drug Co., 38 O. L. R., 268, (decided by the Court of Appeals of Mahoning county on June 14, 1933) the syllabus is as follows:
“The claim of the state for payment of the taxes and penalties on personal property in the hands of the receiver, being an exercise of the sovereign right to claim support, has priority over the claims of all classes of creditors.”
Bearing in mind that this court has no rule similar to the Supreme Court rule making the syllabus the law, it will be found upon carefuf examination of this opinion that *468 all that the court is called upon to decide or did decide was that a claim for personal taxes assessed prior to the receivership was entitled to priority over both wage claims and claims of general creditors. The priority of this tax over the wage claims might reasonably be based upon the court’s implied approval of Judge Sater’s opinion in Hamilton v. Beggs, 171 Fed. 157, but the conclusion of the court that the taxes are entitled to priority not only over the wage claims but as well over the general claims, is clearly based upon a recognition of the paramount right of the state, as a sovereign government, to such preference.
It will be noted that none of the three cases so far discussed involves the question of preference of the tax over a chattel mortgage but in Clegg v. Dayton & Troy Electric Ry. Co., 31 N. P. (N. S.) 38 (decided June 14, 1933) the question of priority of taxes over the mortgages was squarely presented and the court held that all of the taxes including those accruing prior to the receivership were entitled to preference over the mortgages and other liens as well as the general creditors. Among the cases cited by Judge Snediker in support of his conclusion in this case is the earlier case of Creech v. Railroad Co., 2 O. N. P., 164, (decided by Judge Voris ill the Common Pleas Court of Summit county in 1895). Many cases might be cited indicating that the courts have regarded the property of a going railroad, for purposes of taxation, as in a class by itself, but it cannot fairly be said that either of these decisions is put upon that ground.' But a preference of the delinquent taxes over the chattel mortgage in the instant case by authority of Sections 8339 and 11138, General Code, would seem to be precluded by the construction which the Supreme Court of Ohio gave to the corresponding sections of the Revised Statutes (3206-2 and 6335) in Machine Co. v. Supply Co., 68 Ohio State, 535. In that case the question for determination was whether by virtue of these statutes the labor claims were entitled to preference over the chattel mortgages in distribution of the fund arising from the receiver’s sale of the mortgage property. The syllabus is as follows:
“1. After condition broken, the mortgagee under a chattel mortgage, is the owner of the property covered by the *469 mortgage, and the mortgagor has only a. right of redemption.
“2. Where a receiver is appointed and takes possession of chattels covered by a chattel' mortgage after condition broken, as provided in Section 3206-a, Revised Statutes, such chattels, to the extent that the same may be required to satisfy the mortgage, are the property of the mortgagee, and not the mortgagor.
“3. The ‘trust fund’ mentioned in said section, is the fund which would be left for general creditors under Section 6355, Revised Statutes, in the absence of labor claims, and out of that general fund labor claims must be paid, whether the proceeding be under said Section 3206a or under Section 6355.”
In the opinion at page 540, the court holds:
“ ‘Trust funds’, under this section, must be the same, whether the estate is in the hands of an assignee, receiver or trustee, and in all such cases the fund for distribution among creditors generally, is known as a trust fund, because the person in .charge of the estate, holds the funds in trust for all who can show themselves to be beneficiaries under the general law of the land, and not entitled as owners in whole or part, by virtue of a special property or particular lien. As to such the receiver holds the property or its proceeds not in the sense of a trust fund, but under a special obligation to restore it to its owner.”
And further, at page 541, the court says:
“From this it is clear that the fund out of which such labor claims can be paid in cases of assignees or trustees in insolvency is the general fund remaining after the payment of all securities and liens obtained in good faith for value.”
From the reasoning of this case it seems clear that in the case at bar there has arisen no trust fund for general distribution to which the statutes under consideration may apply, since the gross sum realized by sale was much less than the total due the mortgagee.
There thus remains for consideration the question whether the taxes are entitled to preference by governmental prerogative, either by survival in this state of the common law on that subject in its full vigor, .or upon parallel principles as an inherent right of government.
*470 Among the cases relied upon by Judge Snediker as well as by the courts deciding some others of the cases above referred to, is the case of Marshall, Receiver, v. New York (decided by the Supreme Court of the United States axxd reported at 254 U. S., page 890) with an opinion by Justice Brandéis. In that case the court applying what it finds to be the state law of New York holds that taxes are entitled to preference over claims of every class as a paramount aixd sovereign right. Upon careful examination of this important case it will in my opixxioxx be fouxxd that this decision rests upon the court’s conclusioxx that the state had succeeded to the prerogative right which existed at common law in favor of the Exxglish crown by reason of the expx-ess adoption irx the New Yox-k Constitution of the whole body of the commoxx law as it existed at the organization of the state. The question has repeatedly beexx considered in other states of the Union of which some have recognized axxd some have denied the existexxce of such prerogative right. Maxxy such cases are cited ixx a foot note to State v. Foster, 29 L. R. A., page 226, at page 243. These cases seem generally determined according to the court’s construction of the constitution or statutes of the particular state and it would profit little to attempt to review them ixx this opinion. In this connection, however, it should be noted that in U. S. v. Bank of North Carolina, 31 U. S. (6 Peters) 29, the United States Supreme Court held “that the right of the United States to priority of payment of debts due does not stand upoxx any sovereign prerogative, but is exclusively founded upoxx the actual provisions of its statutes.”
An interesting discussion as to whether there is any such prerogative right by commoxx law in Ohio is found in the case of Agency Co. v. Manufacturing Co., 30 O. N. P. (N. S.) page 139, in which Judge Harter of the Common Pleas Court of Stark county, after vigorously denying the existexxce of axxy such right axxd granting priority to the personal taxes accruing during the receivership holds that the personal taxes accruing prior to the receivership are payable- pro rata with the general claims.
But if it were coxxceded that upon commoxx law principles the personal taxes should be givexx priority over the *471 general creditors, it does not follow that they are entitled to preference over the chattel mortgage. As shown by the opinions of the Judges of the House of Lords in the leading English case of Giles v. Grover, 9 Bingham’s Reports, page 128 at page 139, the preference of the Crown was not absolute and was not enforceable when title to the property had passed absolutely or by way of lien, before the Sovereign sought to enforce his right.
“It is conceded that the Crown cannot avoid an equitable mortgage; Casberd v. Attorney General (6 Price 411); or the lien of a factor; the King v. Lee (6 Price, 669): or of a wharfinger; The King v. Humphrey (1 McCleland & Younge, page 173) ; or a bona fide assignment in trust for creditors; The King v. Watson (West on Extents, page 115) ; or any other similar assignment or charge; because they are created, when the debtor has legal power and authority to create them, and attach upon the goods before the process of the Crown, and the Crown can only take the goods subject to such liabilities as the debtor has legally created.”
A further exception is mentioned at page 161 in the opinion of another judge, as follows:
“So again, in the case of goods pawned or pledged * * *. Rex v. Cotton, Parker’s Report, page 112.”
Similarly in New York, after it had been adjudged that the prerogative existed there, it was held in Wise v. Wise Company, 153 New York, 507, page 511, that the priority does not obtain over a specific lien created by the debtor before the Sovereign undertakes to enforce its right, the particular lien under consideration being that of attaching creditors and given by statute.
Similarly in Maish v. Bird, 22 Fed. Rep. 180, it was held that the mortgagee of personal property who takes possession under his mortgage and sells either directly or by court decree before distraint for taxes was entitled to the proceeds where the taxes were not declared by statute to be a lien on the personalty.
In City of Richmond v. Bird, 249 U. S., 174, it was held that the taxes were not entitled to preference over the specific lien of a landlord, acquired by a distraint for rent.
*472 In Mississippi it was held, that the right óf the state to priority of payment of taxes was defeated by the taxpayer’s bona fide transfer of his property before the priority attached, when the' taxes were not a lien. Anderson v. State, 23 Miss., 459. Bailey v. Fuqua, 24 Miss., 497.
Similarly in Lyon v. Guthard, 52 Mich., 271, it was held that personal taxes which were not a lien would not be entitled to priority over an assignment for the benefit of creditors. No useful purpose will be served by further citations indicating that at- common law the prerogative was not in general enforceable as against a sale or other transfer of title or specific lien.
In Kleine v. Katzenberger, 20 O. S., 110, it was decided that a chattel mortgage is a sale of the goods with a condition of defeasance and in Gibson v. Warden, 81 U. S., 244, it was said to be “only a bill of sale with a defeasance incorporated in it.” That it transfers title at least upon breach of condition was decided also in Machine Co. v. Supply Co., 68 O. S., 535.
Such being its legal character it seems clear to the court that such a transfer would suffice at common law to prevent the delinquent personal taxes from receiving preference. Conceding for the sake of argument that there are many potent reasons why the commonwealth might in a proper case be justly entitled to a preference it seems to the court that it is more fitting to leave it to the legislature to declare such preference and define its limits.
The receiver is therefore instructed to pay out of the funds in his hands:
1. Any costs of administration allowed by the court, and not heretofore paid.
2. The corporate franchise tax.
3. All personal taxes accruing during the receivership.
4. The residue to the mortgagees or their legal representatives as their respective interests appear by the existing contract between themselves, that is, two thirds to the Ohio Casualty Insurance Company, and one third to the liquidator of the Standard Trust Bank.
Counsel are requested to prepare a decree in accordance with this opinion, including exceptions for all parties.